In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3264

DION STRONG,

*Plaintiff-Appellant,*

*v.*

ALPHONSO DAVID, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-118—**G. Patrick Murphy**, *Chief Judge.*

ARGUED FEBRUARY 19, 2002—DECIDED JULY 23, 2002

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Two days after Dion Strong, then an inmate at Shawnee Correctional Center, was seen by Dr. Alphonso David for a physical examination, he complained to a guard that David had sexually assaulted him. A lieutenant in the prison's Internal Affairs division ordered Strong to take a polygraph test. He did so, the examiner concluded that he was lying, and the prison commenced a disciplinary proceeding for making false accusations against a staff member. The prison's Adjustment Committee found Strong guilty of the charge and recommended that he be placed in segregation for six months, lose three

months of good-time credits, be transferred to a maximum-security facility, and be demoted in grade. Shawnee's warden reduced the penalty to six months of segregation, three months of "C-grade" status, and a transfer to another medium-security facility. Because in the end Strong did not lose any good-time credits, he is entitled to seek damages under 42 U.S.C. §1983 without first waging a successful collateral attack under 28 U.S.C. §2254. See *Edwards v. Balisok*, 520 U.S. 641 (1997).

Before filing this §1983 action, Strong filed two intra-prison grievances. The first complained not only about the alleged sexual assault but also about the way in which the officers from Internal Affairs and the prison's Adjustment Committee responded. Strong asked to be released from segregation, that the "matter to not be overlooked", and that certain property and privileges be returned to him. His grievance was submitted to and denied by Shawnee's Administrative Review Board. The Board is the prison's final reviewing body for prisoner grievances, and defendants concede that Strong pursued all administrative remedies available to him with respect to this grievance. After arriving at his new prison (recall that a transfer was part of his punishment) Strong filed a second grievance. This repeated the first grievance's factual allegations but sought additional relief, including a new polygraph examination, that "all persons involved be held liable for their actions", and compensation for pain and suffering. Like the first grievance, this came to naught. Strong then initiated this litigation seeking damages not only from David but also from most of the officers involved in the investigation and the disciplinary proceedings. Strong contends that the defendants other than David conspired to conceal David's misconduct and punished him for refusing to recant his charge against David. The district court understood the complaint as making an eighth amendment claim against David and a due process claim against the other defendants

for "negligently failing to hire, train and supervise their employees in violation of state and federal law".

Defendants moved for summary judgment on the ground that Strong had not exhausted his administrative remedies. The Prison Litigation Reform Act prohibits prisoners from filing a suit in federal court "with respect to prison conditions until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Strong insists that his complaint concerns not "prison conditions" but an isolated incident and therefore is not subject to §1997e(a). This line of argument was rejected in *Porter v. Nussle*, 534 U.S. 516 (2002), and does not require further analysis. Exhaustion is necessary—and, the district judge held, has not been accomplished. As the judge saw matters, Strong's first grievance was inadequate because it did not cover all of the legal theories and request the same relief that he seeks in court, while the second did not do the trick because it had not been pursued to conclusion. The court dismissed Strong's complaint without prejudice to refiling after exhaustion.

Normally a complaint's dismissal without prejudice is not a final judgment and therefore may not be appealed. See *Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 417 (7th Cir. 1998). An order to patch up the complaint, or take some other easily accomplished step, is no more reviewable than the resolution of a discovery dispute or equivalent interlocutory ruling. When, however, a plaintiff cannot cure the defects, the dismissal is effectively with prejudice and appealable no matter what language the district judge uses. See *Otis v. Chicago*, 29 F.3d 1159 (7th Cir. 1994) (en banc). Here, as in *Dixon v. Page*, No. 01-1973 (7th Cir. May 28, 2002), slip op. 4, the "without prejudice" language is misleading. Strong filed two grievances and pursued both to conclusion; there is no indication that Illinois would allow him to file another. He *has* no more remedies to exhaust, so the defect that the district judge identified is irreparable—if it is a defect at all. The judge's belief that Strong had neg-

lected to take an administrative appeal of the second grievance—a belief doubtless induced by the defendants' representations to that effect in the district court—was incorrect, as those defendants represented by the Attorney General of Illinois (all defendants other than David) have honorably and commendably conceded on appeal. But unless we act now, Strong is effectively out of court, so as in *Dixon* we have appellate jurisdiction.

The discovery that Strong actually submitted his second grievance to the Administrative Review Board pulls the rug out from under the district court's decision. Defendants nonetheless argue that the order should be affirmed on the ground that neither of Strong's grievances is detailed enough. The district court called the second grievance the "applicable [one] forming the basis of this action" but did not explicitly address its sufficiency after finding that Strong had neglected to take an administrative appeal. The defendants are free to pursue this line because they may seek to preserve—though not enlarge—their victory by presenting any argument made in the district court and supported by the record. Compare *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976), with *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479-81 (1999).

It is unclear how the district judge evaluated the completeness of Strong's grievances: he summarily declared that the first would not suffice but did not say why. Very few courts have addressed what things an administrative grievance must contain, and none has attended to the choice-of-law issue. Courts—and presumably litigants too—have assumed that the general objectives that inspired §1997e(a) also determine how a prisoner must go about exhausting state remedies. The sixth circuit, for example, demands that the administrative grievance name each person who ultimately becomes a defendant. *Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001). In contrast, the eleventh circuit requires only that a prisoner include in a grievance

all the information the prisoner reasonably can be expected to know; failing to identify a specific person does not prevent a later suit against that person. *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000). Presumably the sixth circuit likewise would require legal claims to be identified, while the eleventh would not. Yet both of these decisions skip over a vital question: what body of law governs the specificity inquiry?

Section 1997e(a) does not delineate the procedures prisoners must follow. We have held that the rules come from the prison grievance systems themselves—state law for state prisons, federal administrative law for federal prisons. We wrote in *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), that "prisoner[s] must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Now we add the logical extension that the grievances must contain the sort of information that the administrative system requires. Some states (Illinois is an example) require fact-pleading in litigation, and these might be expected to require factual detail in administrative grievances too. They may use the old code-pleading system under which the complaint must identify each "element" of a "cause of action." See *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992). Federal courts and many states use notice pleading, under which the nature of the claim need only be sketched, see *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), and a pleader need not match facts against the elements of a legal theory. If they follow this approach, prisons would require very little of grievants. Or a given prison system might ask for something in between. It is up to the administrators to determine what is necessary to handle grievances effectively. Systems with more money to hire investigators will require less of prisoners than do resource-starved systems that are strapped to handle even those claims made with particularity. The only constraint is that no prison system may establish a

requirement inconsistent with the federal policy underlying §1983 and §1997e(a). See *Robertson v. Wegmann*, 436 U.S. 584 (1978). Thus, for example, no administrative system may demand that the prisoner specify each remedy later sought in litigation—for *Booth v. Churner*, 532 U.S. 731 (2001), holds that §1997e(a) requires each prisoner to exhaust a *process* and not a *remedy*. No comparable doctrine prevents a prison system from requiring factual particularity in an internal grievance.

As far as we can see, however, Illinois has not established any rule or regulation prescribing the contents of a grievance or the necessary degree of factual particularity. Defendants do not contend that either Illinois or the Shawnee Correctional Center has implemented such a standard, and our own research did not locate one. When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming. Strong's two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more. The case must be remanded for decision on the merits.

On remand, the district judge should be sure to treat separately the claims against David and the other defendants—for even if David did what Strong alleges (and thus violated the eighth amendment in addition to committing a tort under state law), none of the other defendants would be vicariously liable for David's acts. If any of the other defendants knew *in advance* that David poses a serious risk to Strong or other prisoners, then an eighth amendment claim against them would be available on the theory of *Farmer v. Brennan*, 511 U.S. 825 (1994). Cf. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S.

189 (1989). But if these defendants learned only too late, or if they just believed David in a swearing contest between David and Strong, they did not offend the Constitution, which does not require states to prosecute persons accused of wrongdoing. See *Leeke v. Timmerman*, 454 U.S. 83 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). As long as they did not deprive Strong of his opportunity to contest the merits of the charge before the grievance board or sabotage his chance to obtain redress in court, the defendants' uncooperative approach is not an independent constitutional tort; there is no duty to assist in an effort to obtain private redress, and calling lack of assistance a "cover up" adds nothing. See *Christopher v. Harbury*, 122 S. Ct. 2179 (2002). None of the defendants prevented Strong from learning that a wrong had been done him, and none is alleged to have manufactured any evidence. But ours is a system of notice pleading, and Strong may be able to show that he has a real claim against someone other than David. Given what we said above it should not be necessary to add—though we add it anyway—that Strong's entitlement to do this is not limited to or by the contents of his intra-prison grievances.

REVERSED AND REMANDED

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
