**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted April 26, 2005[*]
Decided April 27, 2005

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-4066

| | |
|---|---|
| JOHN L. DYE, JR.,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>PHILLIP A. KINGSTON, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States<br>District Court for the Eastern<br>District of Wisconsin<br><br>No. 03-C-0226<br><br>Rudolph T. Randa,<br>*Chief Judge.* |

**O R D E R**

Wisconsin prisoner John L. Dye, Jr., brought suit under 42 U.S.C. § 1983 alleging as relevant here that prison officials withheld his religious and legal materials in violation of the First Amendment.  The district court ultimately dismissed these claims for failure to exhaust administrative remedies.  We affirm.

Dye's claims stem from the failure of prison officials to return personal property after he was transferred to Columbia Correctional Institution in November 2002.  Before moving to CCI, Dye packed his possessions in a box.  Several days later, after staff at CCI inventoried Dye's incoming property to ensure compliance

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

with prison regulations, Dye received his box.  When unpacking, Dye realized that several items were missing, including Bibles and legal materials.  The legal materials included compilations of various statutes and rules, which appear to be available in the prison library, in addition to a Defensive and Arrest Tactics Training (DATT) Manual that Dye obtained through discovery in a pending civil case.

Dye contacted Warden Phillip Kingston, Security Director Tim Douma, Mail/Property Supervisor Jim Spangberg, and Mail/Property Sergeant Mawby (all defendants in this action) and submitted informal Interview/Information Requests asking that his missing property be returned.  In later correspondence with Kingston, Dye said he needed the legal materials for use in unspecified pending cases.  Later, in the course of threatening litigation to win return of his "'allowable' property," Dye also made mention in one letter of a several-month series that the withholding of his Bibles bordered "close" to a violation of his First Amendment right to free exercise of religion.  Kingston responded by telling Dye to proceed through the "chain of command."  Douma also wrote Dye explaining that the DATT manual was withheld because it posed "security issues."  But if Dye verified that he had court approval to review the manual for pending litigation, added Douma, he would be allowed to "access the material in the interview room of his housing unit."

In addition to his informal requests, in December 2002, Dye filed a timely grievance, identified as Complaint No. CCI 2002-42191, demanding the return of the same items identified in his informal requests, including deodorant, hair nets, shower caps, pens, tobacco, lotion, tennis shoes, and a television cable as well as "legal materials" and "two large print Bibles."  Dye said little about his present need for the legal materials and nothing about the missing Bibles hindering his religious observance.  Officer William Noland (also a defendant) denied his grievance stating first that Dye was "fully aware of where his property" was because he "sent out" his property "on a visit."  In addition, Noland noted that the prison confiscated Dye's publications because he had 59 more than the 25-publication limit allowed at CCI.  In his grievance Dye did not name any prison staff responsible for withholding the property, but in his administrative appeal he identified Kingston, Duoma, Mawbey, and Spangberg as officials who refused "to respond" to his requests for return of legal materials "which pertain to presently pending court matters."  That appeal was denied.

Dye then attached the resolution of Complaint No. 42191 in a second grievance, Complaint No. CCI-2003-3391.  Though Dye repeated his general assertions about wanting the return of his "property/legal materials," he made no specific mention of the withheld Bibles.  This grievance and Dye's related appeals were denied, but in January 2003, Correctional Officer Ditter (a sixth defendant) did return some of Dye's legal materials.  And Ditter informed Dye that he could

pay $100 to have the remaining property that was being withheld for violating the mandated limits sent out of the prison or else it would be destroyed.

Dye then brought this civil rights action complaining that the defendants were violating his First Amendment rights by withholding his legal and religious materials. (Dye also claimed the defendants were hindering his access to the courts by giving him lined paper instead of his preferred typing paper, and by refusing to authorize further loans under Wis. Admin. DOC § 309.51 so that he could pursue his legal matters; these claims are patently frivolous, and the district court correctly dismissed them on the merits. *See Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003) (no subsidized right to access to the courts); *Johnson v. Daley*, 339 F.3d 582, 585 (7th Cir. 2003) (same).) At first the district court denied the defendants' motion seeking summary judgment for failure to exhaust administrative remedies, *see* 42 U.S.C. § 1997e(a), explaining that the defendants had offered too little information to establish conclusively that Dye had not exhausted his First Amendment claims. The court also denied Dye's own request for summary judgment on his First Amendment claims, reasoning that Dye lacked evidence that the missing legal materials had caused "actual injury" to his litigation efforts, or that his "exercise of religion was unduly burdened by the defendants in the absence of a reasonably related legitimate penological interest."

The defendants later renewed their motion for summary judgment, again arguing that Dye had failed to exhaust his First Amendment claims through the administrative process. This time granting the motion, the district court concluded that Dye's grievances about his missing property made "no specific allegations against the defendants"; rather, the court noted, Grievance No. 49121 simply presented a "laundry list" of missing items. Reasoning that Dye had not suggested "that it was prison policy to deny inmates religious and legal materials," and that his grievances included too little information "to link any of the defendants to his missing property," the court held that Dye had not given "notice" of his contentions, and thus failed to exhaust his administrative remedies.

On appeal Dye disputes the district court's determination that prison officials were not given sufficient notice of his First Amendment claims. Dye argues that his grievances were "not lacking such information that the administrative system requires," and that he gave the prison the necessary opportunity to respond to his complaint about the withheld property. And, in answer to the defendants' argument that he could not have exhausted without specifically naming them in his grievances, Dye argues that it was enough that he identified them in his administrative appeal of Complaint No. 42191.

A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates

litigation. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *see Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *see Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Thus, drawing on principles of notice pleading, we have held that absent more stringent administrative requirements an inmate need not state "facts, legal theories, or demand relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 250; *see Riccardo*, 375 F.3d at 524. We and the majority of the circuits have never endorsed, though, the defendants' invitation to engraft onto § 1997e(a) a requirement that defendants to a civil suit be first named in an inmate's prison grievance. *See Strong*, 297 F.3d at 649 (noting that Sixth Circuit requires inmate to name defendant in grievance but opting for notice pleading where prison rules are silent); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (no need to identify involved official if notice from grievance was sufficient); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (remanding for determination whether failure to name defendant until disciplinary appeal sufficed for notice of grievance against official); *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (not requiring inmates to name defendant in grievance if information not available); *but see Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (requiring that defendants be named in grievance for exhaustion).

We start with the free-exercise claim. Although we reject the defendants' premise that Dye failed to exhaust his administrative remedies solely because he did not identify the responsible officials by name in his first grievance (he did name them in the administrative appeal from the denial of this grievance), we nonetheless agree with the district court that Dye's mere listing of missing items in his grievance did not give sufficient notice to prison officials that he was contending that not having access to the missing Bibles was impeding his free exercise of his religion. Dye's grievance needed to alert prison officials to the "nature of the wrong," *Strong*, 297 F.3d at 650, but a "laundry list" of missing property that lumps deodorant and tennis shoes with the two Bibles does nothing to inform the recipient that the Bibles carried greater significance or were sought for reasons different than the other missing items. As such, the grievance plainly alerted the defendants that Dye demanded the return of a broad class of personal property, but not that the lack of access to some of the items was impeding his ability to practice his religion. In this regard, Dye's single mention that prison officials were "bordering" on a free-exercise violation in one letter out of a several-month correspondence with Warden Kingston further convinces us that Dye failed to give notice of his religion claim. If Dye's point was that not having his Bibles was infringing on his religious practice, we would expect him to say so specifically and with greater frequency;

instead, Dye tacked on the reference to the First Amendment within the context of threatening litigation for the return of all of his "'allowable' property."

That leaves only the legal materials, and although we believe it a closer question, we need not resolve the question because the claim goes nowhere on the merits. Unlike with his free-exercise claim, Dye in his grievances and correspondence delineates his legal materials from the rest of his property and mentions, albeit in vague terms, that withholding the materials was impacting pending litigation. But regardless of notice, at this late point in the litigation—following Dye's own failed motion for summary judgment—the record is empty of any evidence of actual harm to his pending or potential litigation as a result of his inability to access the missing materials. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (holding that inmate must demonstrate "actual injury," i.e., that his efforts to pursue nonfrivolous legal claim were or are hindered); *Tarpley v. Allen County*, 312 F.3d 895, 899 (7th Cir. 2002). Despite the obvious need to provide the district court with all of his evidence of impacted litigation when he moved for summary judgment, the closest Dye comes to even asserting actual harm is his belated allegation in his appellate brief that he was unable to respond to discovery in one case. Yet, Dye fails to identify what consequences, if any, befell him as a result of not having the legal material; he makes no mention of a court sanction for the delay, let alone any action that resulted "in actual substantial prejudice to specific litigation." *See Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003) (internal quotations and citations omitted). Because Dye cannot satisfy the elements of an access-to-the-courts claim, we conclude that there is no need to remand this case for further proceedings.

Accordingly, we AFFIRM the judgment of the district court.