UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted January 4, 2006[*]
Decided January 5, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1775

| | |
|---|---|
| MICHAEL MAYO, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of |
| | Illinois, Eastern Division |
| *v.* | |
| | No. 01 C 2369 |
| DONALD SNYDER, et al., | |
| *Defendants-Appellees.* | Blanche M. Manning, |
| | *Judge.* |

**O R D E R**

Illinois inmate Michael Mayo filed a *pro se* lawsuit under 42 U.S.C. § 1983, alleging that prison administrators, a doctor, two nurses, and a correctional officer were deliberately indifferent to his requests for relief from his back pain.  On cross-motions for summary judgment, the district court ruled for the defendants. Mayo appealed, and we affirm.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

The facts are essentially undisputed.  Beginning on November 20, 2000, Mayo was assigned to the top bunk in cell C34 at Sheridan Correctional Center.  He claims that this bunk had been altered so that it had no ladder or railing for him to use while climbing in or out.  Because he had to pull himself up and into the bunk each day, he says, he began to experience back pain.  On November 22, he asked to see a doctor for the pain by completing a health care request slip and placing it in the prison lockbox.  When he received no response, he submitted a second request on November 28, and a third on November 30.  When he received no response to these requests, he says, he told Officer Megan Koch about the pain and asked her to move him to a bottom bunk.  Koch denied his request, explaining that only doctors could order bottom bunk permits, and suggested that he file a grievance.

On December 2, Mayo filed a grievance about receiving no response to his requests for a doctor's appointment and asked "to be evaluated by Health Care officials for back pain or injury and if possible, [sic] a bottom bunk permit in the interim."  A counselor received the grievance on December 8 and one week later referred Mayo to the health care unit.  There, Dr. Doughty and Nurse Arnett examined Mayo, who suggested that a bottom bunk would alleviate his pain.  Doughty then prescribed "Williams exercises," warm compresses, and Tylenol but declined Mayo's request for a bottom bunk, explaining, Mayo recalls, that he "couldn't give a bottom bunk permit to everyone who asked for one."

On December 19, prison officials moved Mayo from cell C34 to cell A12, where he was assigned to a top bunk equipped with an access ladder.  They also summoned him to the health care unit for a follow-up exam by Nurse Arnett.  Mayo explained to Arnett that the exercises caused him "more pain" and that the Tylenol was ineffective; he again requested a bottom bunk.  Arnett told him that she was not authorized to issue bottom bunk permits; she then prescribed Advil, instructed him to continue the exercises and compresses, and referred him to a doctor.  Although Mayo says that he continued to experience pain, he stopped doing the exercises and applying the compresses, and did not visit the health care unit again until February 5, 2001, when his "back locked up," leaving him immobilized on the floor of his cell.  In response to his call for emergency medical assistance, guards carried him to the health care unit, where Nurse Henneke examined him, prescribed Motrin and a muscle rub, referred him to the doctor, and again denied his request for a bottom bunk permit.  Mayo walked back to his cell.

Mayo then filed this lawsuit.  He alleged that Assistant Warden of Programs Richard Partak and Chief Medical Administrator Marlene Trenter were directly responsible for allowing medical personnel to disregard his requests for pain relief.  Specifically, he alleged that they supervised the day-to-day functions of the medical staff, bore responsibility for the "policies and procedures" that permitted the three-week delay between his requests for medical treatment and his being seen by

a doctor, and failed to investigate the cause of the delay even after becoming aware of his requests. As to Officer Koch, Mayo alleged that she ignored his verbal request for medical treatment and reassignment to a bottom bunk. Mayo also alleged that Dr. Doughty and Nurses Arnett and Henneke arbitrarily denied his requests for a bottom bunk and provided treatment so inadequate that it constituted cruel and unusual punishment.

The district court granted defendants' motions for summary judgment and denied Mayo's cross-motions for summary judgment. It found that Mayo failed to exhaust his claims as to Dr. Doughty and Nurses Arnett and Henneke because his December 2 grievance was insufficient to put prison officials on notice of claims arising from medical treatment he subsequently received (on December 15, 19, or February 5). Similarly, the district court found that Mayo failed to exhaust his claims against Officer Koch because Mayo's grievance did not contain information concerning his requests to Koch for medical treatment or reassignment to a bottom bunk. As to administrators Partak and Trenter, the district court concluded that Mayo exhausted his administrative remedies but failed to produce evidence showing that the delay between Mayo's first request for treatment and his eventual doctor's visit three weeks later adversely affected his back pain. It therefore concluded that Mayo failed to establish deliberate indifference as to Partak and Trenter.

We review de novo the district court's determination that Mayo failed to present evidence of a genuine issue of material fact, viewing all facts and inferences in Mayo's favor. *See Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002). Exhaustion of administrative remedies is a prerequisite to bringing a § 1983 claim for denial of medical care. *See* 42 U.S.C. § 1997e(a); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Inmates must follow a state's rules about the content of grievances. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Although an inmate's grievance need not contain facts, articulate legal theories, or demand a certain form of relief, it must provide an intelligible objection "to some asserted shortcoming." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

On appeal, Mayo for the most part renews his claim before the district court that his grievance of December 2, 2000 was sufficient to exhaust his remedies against Dr. Doughty, Nurses Arnett and Henneke, and Officer Koch. Mayo acknowledges that his grievance complained only of the delay in scheduling him for evaluation of his back pain, but he argues that the grievance should be interpreted broadly to encompass any complaints resulting from his eventual treatment for that pain. Because he checked the box on the grievance form marked "medical treatment" and wrote that he sought treatment for "back pain," Mayo says, this grievance is sufficient to put prison administrators on notice that he objected generally to his medical treatment, including treatment received after December 2.

Mayo is incorrect.  As the district court explained, Mayo failed to exhaust his remedies against Dr. Doughty and Nurses Arnett and Henneke because he filed his grievance before he was ever seen by these medical personnel.  Although we have held that a grievance need only "alert[] the prison to the nature of the wrong for which redress is sought," *Strong,* 297 F.3d at 650, in no way could Mayo's December 2 grievance be construed to object to medical treatment he would subsequently receive.  Similarly, the district court found that Mayo failed to exhaust his remedies as to Officer Koch because his grievance did not mention his verbal request to her.  We cannot find fault with the district court's analysis.  The district court properly granted summary judgment to defendants Doughty, Arnett, Henneke, and Koch.

Mayo also argues that the district court erred in granting Partak and Trenter summary judgment because it failed to consider all his medical evidence in determining whether he established that his health was detrimentally affected by the three-week delay between his initial sick call request and his eventual appointment with Dr. Doughty.  Mayo claims that the court looked only at Dr. Doughty's December 15 diagnosis of merely lower back pain and not at subsequent entries in his medical records such as Nurse Arnett's December 19 diagnosis of chronic lower back pain.  A comparison of those conflicting diagnoses, Mayo says, creates a material issue of fact regarding whether he suffered injury from the delayed treatment.

To establish a § 1983 claim for denial of medical care, an inmate must demonstrate that he suffered from an objectively serious medical condition that the defendants knew about but ignored.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Although a delay in scheduling an appointment for medical treatment may constitute deliberate indifference, *see Jones v. Simek*, 193 F.3d 485, 490-91 (7th Cir. 1999), the inmate must support his claim with "verifying medical evidence" to establish that the delay detrimentally affected him, *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Contrary to Mayo's assertions, the district court's opinion reflects that it considered Mayo's entire medical record but nevertheless determined that the evidence did not establish that he was harmed by the three-week delay in receiving a doctor's appointment.  Mayo's medical records reveal no evidence of physical injury but merely document two diagnoses—lower back pain and chronic lower back pain.  Mayo believes that these differing diagnoses prove that the delay aggravated his condition.  This discrepancy, however, shows only a classic example of medical judgment.  *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (holding that matters concerning appropriate diagnosis and treatment do not constitute deliberate indifference).  Moreover, whether Mayo established that the delay caused him injury is irrelevant because Mayo failed to produce any evidence whatsoever that prison administrators Partak or Trenter even knew of his requests for treatment

before December 15 much less ignored them. *See Greeno*, 414 F.3d at 653 (prison officials can only be liable under § 1983 if they know of risk to inmate's health). The district court properly granted summary judgment in Patrak's and Trenter's favor.

AFFIRMED.