NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2008[*]
Decided July 29, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1434

| | |
|---|---|
| TERRANCE J. SHAW, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 05-C-872 |
| MATTHEW J. FRANK, et al., | J.P. Stadtmueller, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Wisconsin inmate Terrance Shaw sued various prison officials under 42 U.S.C. § 1983, claiming a host of constitutional violations in connection with his denial of parole. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (permitting challenges to state parole procedures under § 1983). The district court denied his request for counsel, dismissed three of his claims for failure to exhaust the grievance process, and ultimately

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

granted summary judgment in favor of the defendants. Shaw challenges each of these rulings. We affirm in all respects.

Shaw is currently serving a life sentence plus twenty years for rape and murder. In the hopes of someday attaining parole, Shaw participated in the Sex Offender Treatment Program (SOTP). But prison doctors expelled Shaw from SOTP in 1999 on the grounds that he had refused to participate fully and had failed to acknowledge the seriousness of his crimes and violent sexual tendencies. Four years later, Shaw's therapist noted a marked improvement in "self-disclosure and feedback." His therapist stopped short of any treatment recommendation, though, because "[a]ny final treatment decisions should also include physiological measures of current sexual deviancy."

In light of his therapist's suggestion, Shaw requested a penile plethysmograph procedure, which the Wisconsin Department of Corrections uses to measure sexual arousal in response to suggestive content. Prison officials construed Shaw's request as an application for re-enrollment in the SOTP program—the procedure is typically administered as part of the program—and denied the request because "priority is given to inmates who have not yet been afforded their first opportunity" to participate in SOTP. Shaw responded with a grievance in which he clarified that he had not requested re-enrollment in the "3 to 4 years Sex Offender Treatment Program." Shaw explained:

> All I (very clearly) requested . . . was for them to hook me up to their plythismalgraph [sic] that they have housed over there in K-Building. . . . Measuring my current sexual deviancy on this plythismalgraph [sic] only takes an hour or two.

Prison officials ultimately dismissed Shaw's grievance because he had not articulated any violations of law or prison regulations in connection with the denial of his request.

After he was denied parole for reasons that included unsatisfactory participation in SOTP, Shaw sued various prison officials under § 1983, claiming, as relevant here, that the defendants had refused his request for re-enrollment in SOTP in violation of his right to equal protection. Shaw also claimed that the unwritten requirement of SOTP completion prior to parole violated the Ex Post Facto Clause because the program was not in place at the time that Shaw was sentenced and the requirement of completion retroactively extended his punishment. Finally, Shaw requested that the district court furnish him with counsel in light of the complexity of the issues presented.

The district court denied Shaw's motion for appointment of counsel, noting that civil litigants do not have a right to counsel. *See Pruitt v. Mote*, 503 F.3d 647, 649, 656-58 (7th

Cir. 2007) (en banc). While the court acknowledged that Shaw had been unable to recruit counsel, the court concluded that the legal issues he presented were "straightforward and uncomplicated." Moreover, the court reasoned, Shaw's extensive filings showed that he was capable of litigating his case. In any event, the court wrote, the presence of counsel would not likely affect the outcome of Shaw's case.

The court also dismissed Shaw's equal-protection claim for failure to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-92 (2006). The court reasoned that Shaw's grievance asked for only the plethysmograph procedure—not reinstatement in SOTP—and thus could not have put prison officials on notice of his desire to return to SOTP.

Finally, the district court granted summary judgment in favor of the defendants on Shaw's ex post facto claim because Shaw had not identified any "law" requiring him to complete SOTP before he could be released on parole. Given Shaw's sentence of life imprisonment, the court wrote, he enjoyed no entitlement to mandatory release under Wisconsin law, and parole in Wisconsin is a matter of discretion to which the Ex Post Facto Clause does not apply.

On appeal Shaw contends that the district court erred in finding that he failed to exhaust his administrative remedies with respect to his equal-protection claim. We review de novo a district court's determination of failure to exhaust. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion is a modest requirement: "All the grievance need do is object intelligibly to some asserted shortcoming" so that prison officials can remedy the problem before facing a lawsuit. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see Ngo*, 548 U.S. at 89. Shaw argues that his grievance amounted to a request for re-enrollment because the procedure sought is only available to SOTP participants. Any language to the contrary, Shaw insists, sought to clarify only that he did not wish to start the program anew but rather pick up where he left off in 1999—two units short of completion. Yet a plain reading of the grievance makes clear that Shaw asked for the procedure and nothing more. Shaw explicitly instructed prison officials that his request did not pertain to SOTP. Accordingly, we agree with the district court's conclusion that Shaw did not apprise the defendants of his desire to re-enter SOTP.

Next up is Shaw's assertion that a genuine issue of material fact existed as to his ex post facto claim. We considered—and rejected—an identical argument in *Grennier v. Frank*, 453 F.3d 442, 444-45 (7th Cir. 2006). Grennier, a Wisconsin inmate serving a life sentence for murder, argued that his sex-offender designation and the requirement of treatment before parole violated the Ex Post Facto Clause because it "hamper[ed] his chance for parole release." *Id*. at 444. We held, however, that any requirement of treatment was not a "law"

for purposes of the clause. *Id*. at 444-45. Our opinion in *Grennier* identified the flaw in this argument:

> Defendants allow that Wisconsin has become less willing to release persons convicted of serious offenses and now demands assurance that interests in deterrence, desert, and public safety have been satisfied before a murderer will be let free. Neither the ex post facto clause nor the due process clause has anything to say about how discretion will be exercised under an open-ended system, however. *See Blakely v. Washington*, 542 U.S. 296, 308-10, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004). . . . The constitutional interest is in the rules and statutes—the "laws" to which it refers—rather than the attitudes of public officials who administer a discretionary system. *See Prater v. U.S. Parole Commission*, 802 F.2d 948 (7th Cir. 1986) (en banc). Parole officials who become more concerned with public safety—and who act on that concern by insisting that prisoners complete sex-offender treatment programs before release—do not violate the Constitution. *See, e.g., McKune v. Lile*, 536 U.S. 24, 122 S. Ct. 2017, 153 L.Ed.2d 47 (2002).

*Id.* at 445.

Finally, Shaw argues that the district court erred in denying him counsel. *See* 28 U.S.C. § 1915(e)(1). Civil litigants do not have a constitutional or statutory right to counsel, though a court may, in its discretion, put out the call for a volunteer attorney to represent an indigent plaintiff. *Id.*; *see Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). When faced with a request to recruit counsel, a district court must consider whether the plaintiff has made reasonable attempts to find counsel on his own and whether the plaintiff has demonstrated an ability to litigate his case. *See Pruitt*, 503 F.3d at 654-55. Any examination of a plaintiff's ability to prosecute his case must consider his "literacy, communication skills, educational level, and litigation experience." *Id.* at 655. We review a denial of a motion to recruit counsel under § 1915(e)(1) for abuse of discretion coupled with prejudice. *Hammer v. Ashcroft*, 512 F.3d 961, 971 (7th Cir. 2008); *Pruitt*, 503 F.3d at 658-60. Our task on appeal, then, begins with an examination of "whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Pruitt*, 503 F.3d at 658.

There is no doubt that the district court applied the correct legal standard in rejecting Shaw's request for counsel. We conclude that it was a reasonable decision as well. Shaw demonstrated his competence throughout the litigation. He submitted requests for discovery, filed numerous motions, cited relevant case law, and made cogent legal arguments. Five of his civil-rights claims survived screening. *See* 28 U.S.C. § 1915A. We

detect no abuse of discretion in the decision to let him continue his litigation without the support of an attorney. *See Hammer*, 512 F.3d at 971.

One final point warrants discussion. Shaw appears to raise a fourth issue in his brief by posing the question, "Did Shaw present sufficient evidence to establish the denial of the use of his new religious name placed a substantial burden on the practice of his religion?" Shaw says nothing more, however, so he has waived this argument. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002) ("Perfunctory and undeveloped arguments are waived.").

AFFIRMED.