**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1586
_____

CARLOS ZUNIGA,
                    Appellant

v.

CHAMBERLAIN, Case Manager; LINCALIS, Unit Manager;
LT. SUDUL; SIS LT. LYONS; SIS LT. PRUTZMAN;
WARDEN SPAULDING; CMC GAINER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-17-cv-00792)
District Judge: Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 20, 2020

Before: KRAUSE, MATEY, and ROTH , Circuit Judges

(Opinion filed: July 21, 2020)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Carlos Zuniga appeals the District Court's orders granting Appellees' motion for summary judgment and denying his motion filed pursuant to Fed. R. Civ. P. 60(b). For the reasons below, we will affirm the District Court's judgment.

Zuniga, a federal prisoner, alleged in his complaint that prison officials failed to protect him from assault. He asserted that he informed his case manager and his unit manager in January 2015 of threats and extortion by prison gang members. Zuniga claimed that the prison officials disclosed his allegations to two of the gang members, Chavez and Hernandez, who then charged Zuniga a higher monthly extortion fee of $50. Zuniga does not allege that he filed any grievances at that time challenging the prison officials' purported disclosure of his allegations to gang members.

Four months later, on May 14, 2015, Chavez and Hernandez purportedly assaulted Zuniga, telling him that the reason for the assault was because he had complained to prison officials about them. On May 25, 2015, Hernandez and three other gang members advised Zuniga to leave that prison. Zuniga alleged that he then went to a prison official's office and requested protection. When Zuniga refused to leave the official's office, he was escorted to the Special Housing Unit (SHU).[1] He asserted that upon his

---

[1] According to an incident report Zuniga submitted in support of his complaint, he told staff that he could not return to his housing unit but would not say why; there was no mention of him requesting protection.

arrival to the SHU, a correctional officer noticed his bruises, and Zuniga reported the assault.[2]

Zuniga alleged that two Special Investigative Supervisors (SIS) interviewed him but failed to make a report or charge Chavez and Hernandez with assault.[3] Zuniga also asserted that he was kept in the SHU unlawfully for seven months until he was transferred.

Appellees filed a motion to dismiss or, in the alternative, for summary judgment. They argued that Zuniga had not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a) and that some of his allegations failed to state a claim. In March 2018, the District Court granted the Appellees' motion for summary judgment. It determined

---

[2] According to the prison's investigation, Zuniga did not report the assault upon being sent to the SHU on May 26. Rather, he reported it almost a week later on June 1. When he was assessed for injuries, only minor bruising was noted.

[3] Prison officials determined that Zuniga's allegations of assault were false after watching footage from prison cameras: "[Zuniga] provided dates and times of when he was allegedly assaulted by other [members of the inmate gang]. The times provided by [Zuniga] to the SIS Lieutenant changed frequently. The SIS Lieutenant watched all times and dates via CCTV that were identified by [Zuniga] and found that all times and dates were false." The investigator also interviewed Zuniga as well as several other inmates. According to the Investigative Report, Zuniga was causing tension between his gang and another prison gang. His gang asked him to leave general population to keep the peace. According to the investigator, Zuniga stated that he wanted to associate with another prison gang and the leader of his former gang gave his blessing. He alleged that he was assaulted by Chavez and Hernandez (members of his former gang) in May 2015 but he did not say anything. The investigator did not report any statements by Zuniga that prison officials endangered him by sharing his allegations with gang members. Zuniga did not assert, as he did in his complaint, that Chavez and Hernandez told him they assaulted him because he had complained to prison officials about them.

3

that Zuniga failed to exhaust his administrative remedies for his claim that prison officials failed to protect him. It also concluded that his allegations against one Appellee failed to allege any personal involvement and that Appellees were entitled to summary judgment on Zuniga's allegations of unlawful SHU confinement.[4] Zuniga then filed a timely motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6). The District Court denied the Rule 60(b) motion, and Zuniga filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

I.      Exhaustion

We exercise de novo review over the District Court's determinations that Zuniga failed to exhaust his administrative remedies. Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A prisoner may not file a Bivens action until he has exhausted available administrative remedies. See 42 U.S.C. § 1997e(a); Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000). "Proper exhaustion demands compliance with an agency's deadlines and

---

[4] We will affirm the District Court's judgment with respect to Zuniga's remaining claims for the reasons given by the District Court. These claims do not merit further discussion. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (liberty interests requiring procedural due process limited to freedom from restraints that impose "atypical and significant hardship" as compared to ordinary prison life); Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009).

4

other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Failure to exhaust is an affirmative defense for the defendants to plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007).

Under the BOP's administrative grievance procedures, an inmate must first try to resolve his issue informally with staff. 28 C.F.R. § 542.13. Zuniga satisfied this first step when on October 20, 2015, he filed an informal resolution form, alleging that staff members failed to protect him from an assault by two inmates and requested that those inmates be disciplined for the assault.[5] On October 29, 2015, a staff member stated that the issue could not be resolved informally and issued Zuniga a BP-9 form to file an initial grievance.

If the inmate cannot resolve the issue informally, he may file a written complaint within twenty days of the date of the occurrence on which the complaint is based. Id. § 542.14(a). An extension of the twenty-day period may be allowed if the inmate "demonstrates a valid reason for delay." Id. § 542.14(b). On October 30, 2015, nine months after he spoke with his case manager and unit manager and five months after the

---

[5] Zuniga stated in his informal grievance: "concerning safety issue a duty upon prison off. to protect prisoners from violence at the hands of other a substantial risk of serious harm to an inmate staff members are in violation of program statement 3420.09 standard ethic conduct for employees for [failure] to report to SIS or protect inmate Zuniga from harm a substantial risk when Zuniga report the Chavez and Hernandez threatens and abuses harasses us [failure]Zuniga was [assaulted]. Charge inmate's Chavez and Hernandez with a prohibited act for assault inmate Zuniga on about month of May."

alleged assault, Zuniga filed the BP-9 form. His grievance did not request an extension of the time to file or give a reason for any delay. He stated that the staff members failed to report his concerns to the SIS and failed to protect him from physical assault:

> I did not agree with the counselor's response. When I first report the incident to staff members I put my life and safety in harms way. [Failure] to take charge of this incident on time later led to me being assaulted by Chavez and Hernandez. Concerning safety issues, it's a prison officials job to protect prisoners from violence at the hands of other inmates. Staff members are in violation of program statement 3420.09, standards of employee conduct for [failure] to report to S.I.S. or protect inmate Zuniga from any harm. When Zuniga reported Chavez and Hernandez wrong doing it seems the prison officials still failed in there duties to protect Zuniga from physical assault. To resolve my complaint and find a solution I want inmate Chavez and Hernandez charged with assault of inmate Zuniga on or about the month of May.

In their statement of material facts, Appellees asserted that the initial grievance was rejected as untimely and submitted a prison grievance report listing all of Zuniga's grievances for the relevant time period. The report indicated that the initial grievance had been given the number #841063-F1 and was rejected as untimely on November 3, 2015. In his objections to Appellees' statement of material facts, Zuniga responded generally that he had timely followed the steps of the grievance process but that the Appellees obstructed the process by sending his grievances back to him. He did not specifically respond to the Appellees' assertion that the initial grievance was rejected as untimely. He did not acknowledge the first grievance or supply a copy of the prison officials' response to that first grievance. He did not claim any exception to the deadline for initial grievances.

6

On November 9, 2015, Zuniga resubmitted the grievance which was given the number #841063-F2.[6]  The Warden responded that he understood Zuniga to be claiming he had been assaulted and was requesting more investigation.  The Warden noted that an extensive SIS investigation was conducted and the investigators had concluded that Zuniga's allegations were not reliable and unfounded.  He noted that the response was for informational purposes only.

II.    Summary Judgment

Upon initial review of the appeal, the Clerk instructed the parties to brief several issues, including whether the prison mailbox rule applies to the BOP's grievance system.[7]  On appeal, Appellees argue that we need not reach the issue of whether the prison mailbox rule applies to grievance appeals because the District Court determined that Zuniga's initial grievance was untimely.  Thus, they argue, the District Court's order may be affirmed on that ground.  Zuniga did not respond to Appellees' argument in his reply brief.

---

[6] The copy of the grievance Zuniga submitted reflects that it was received on November 3, 2015, and re-received on November 9, 2015.  The number of the grievance was originally 841063-F1 but the 1 was crossed out and replaced by a "2," presumably when it was resubmitted.

[7] Zuniga's appeal of the rejection of his grievance was eventually rejected as untimely. He argues that the appeal was timely filed under the prison mailbox rule of Houston v. Lack, 487 U.S. 266 (1988).

7

We agree that the District Court's order may be affirmed on the ground that Zuniga failed to timely file his initial grievance; thus, he did not properly exhaust his administrative remedies. As described above, Zuniga did not specifically dispute Appellees' assertion that his first grievance was rejected as untimely or claim any exception to the grievance deadline. He did not acknowledge the first grievance or supply a copy of the prison officials' response to that first grievance. Based on the record before it, the District Court did not err in granting summary judgment as there was no genuine dispute as to whether Zuniga timely filed his initial grievance and Appellees were entitled to summary judgment on the ground that Zuniga failed to properly exhaust his administrative remedies.[8]

---

[8] In his reply brief, Zuniga argues that his allegations state a claim under the Eighth Amendment. However, even if the allegations of the initial grievance were considered properly exhausted, those allegations do not likely state a plausible claim for failure to protect. To do so, an inmate must allege facts that demonstrate that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012). Not every injury inflicted by one inmate on another creates a constitutional liability for prison officials. Farmer v. Brennan, 511 U.S. 825, 834 (1994). It is not enough for a plaintiff to offer only conclusory allegations or a simple recital of the elements of a claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Zuniga asserted in his grievance that he reported an undescribed incident to unnamed staff members who failed to refer the matter for investigation or protect him from harm. Importantly, he did not claim, as he did in his complaint, that prison officials told the gang members that he had reported their behavior. A grievance must, at a minimum, alert prison officials to "the nature of the wrong for which redress is sought." Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Exhaustion requires that prisoners "provide enough information about the conduct of which they complain to allow prison officials to take

III.    Rule 60(b)(6) motion

After the District Court granted summary judgment, Zuniga filed a motion pursuant to Rule 60(b)(6). For the first time, he alleged that he was told by a prison official to not file any grievance until the investigation was over. Zuniga did not state when he was informed that the investigation was over. He did not allege that he informed prison officials of this when he submitted his first initial grievance or after the initial grievance was rejected as untimely. Nor does he explain why he did not timely file a grievance when the prison officials allegedly informed Chavez and Hernandez in January 2015 of his allegations against him—the act that purportedly caused Zuniga to be in danger.

Zuniga also argued that his initial grievance was not rejected as untimely because the Warden responded to the grievance. However, the Warden responded to #841063-F2,

_____

appropriate responsive measures." Id. at 296 (quoting Johnson v. Testman, 380 f.3d 691, 697 (2d Cir. 2004)).

The allegations of his grievance do not plead conditions posing a substantial risk of serious harm, that the prison officials were indifferent to that risk to his safety, or that any deliberate indifference caused the harm. In Bistrian, the detainee alleged in one incident that jail officials were deliberately indifferent when they placed him in a locked recreation pen with an inmate with a history of violent assaults against other inmates. This Court held that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to state a claim of deliberate indifference by prison officials. Bistrian, 696 F.3d at 371. Here, the generalized allegations in Zuniga's initial grievance that staff failed to protect him likewise do not appear to state a claim.

9

the resubmitted grievance.  Moreover, the Warden stated that the response was for informational purposes only.

A litigant must show "extraordinary circumstances" to justify reopening a final judgment pursuant to Rule 60(b)(6).  Gonzalez v. Crosby, 545 U.S. 524, 535 (2005). Zuniga's failure to make this important assertion regarding the timeliness of his first grievance before the District Court granted summary judgment does not constitute an extraordinary circumstance supporting the reopening of the District Court's judgment. The District Court did not err in denying the Rule 60(b)(6) motion.

IV.    Conclusion

For the above reasons, we will affirm the District Court's judgment.