In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1868

JOSEPH DOLE,

*Plaintiff-Appellant,*

*v.*

CORRECTIONAL OFFICER CHANDLER,
SERGEANT BUTLER,
SUPERINTENDENT HASEMEYER,
SUPERINTENDENT PICKERING,
LIEUTENANT BIGGS,
CORRECTIONAL OFFICER HESS,
KELLY RHODES, CHARLES HINSLEY,
UNKNOWN YARD OFFICERS,
UNKNOWN HCU OFFICERS,
and UNKNOWN TRANSPORT OFFICERS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-CV-61—**David R. Herndon**, *Judge.*

ARGUED JANUARY 12, 2006—DECIDED FEBRUARY 24, 2006

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* Joseph Dole, a prisoner, claims that he was beaten by prison guards in retaliation for punching

an assistant warden. He attempted to file a grievance with the Administrative Review Board ("the ARB" or "the Board"), as required by Illinois regulations, before the deadline to do so had lapsed. He placed his grievance in the hands of prison authorities inside of an envelope addressed to the ARB. He did not have the option of mailing the grievance himself. When he heard no response from the ARB, he sent another letter to inquire about his grievance's status. The ARB responded that it had no record of receiving the grievance. Dole was not given any instructions on what to do next, and by the time he learned that the ARB had not received his grievance, a new one would have been untimely. Although the ARB will accept untimely filings with good cause shown, Dole did not attempt to re-file his grievance.

Dole has now filed a suit under 42 U.S.C. § 1983 in federal court against the defendants. The district court granted summary judgment to the defendants on the ground that Dole failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Dole appeals, claiming that he strictly complied with all regulations when filing his grievance and did all that he was capable of doing to assure that his complaint reached the ARB. This, he claims, should constitute exhaustion under the PLRA.

For the following reasons, we find in favor of the plaintiff, reverse the district court's summary judgment ruling, and remand for further proceedings.

## I.  Background

### A.  The conduct alleged in Dole's suit

Joseph Dole was an inmate at Menard Correctional Center on March 15, 2002, when he hit Assistant Warden

Al Frentzel in the prison yard.[1] Shortly thereafter, as he was being restrained in the prison yard, he claims that he was beaten by defendants Biggs and Hess, and possibly others. He states that he was then transported to the Health Care Unit, where he was beaten by defendants Chandler, Butler, Hasemeyer, Pickering, and possibly others. The guards allegedly locked him in an examination room, slammed his head into a biohazard box and into the sink, kicked him in the ribs, and beat him until he passed out. A civilian nurse in the Health Care Unit beat on the door and shouted for help, at which point Dole claims that the guards ceased abusing him. When the nurse entered the room, Dole was examined and it was discovered that he had suffered a broken nose and several small abrasions and bruises on his ribs.

After that incident, Dole alleges that he was transported to Tamms Correctional Center in a van with the windows open, which made the temperature inside the van unreasonably cold. He claims that although he requested that the officers close the windows, they refused. According to Dole, the officers were wearing heavy winter coats, and he was wearing only a thin prison uniform and prison shower shoes. Finally, Dole states that he was placed on suicide watch for five days as retribution for attacking the assistant warden and not out of medical necessity.

The nurse who intervened in the alleged beating at the Health Care Unit complained to the Illinois Department of Corrections' ("the Department") Internal Affairs Office, which initiated its own investigation of the incident the same day. The Department also forwarded a request to the

---

[1] As punishment for this action, Dole was transferred to Tamms Correctional Center, a maximum security prison, and placed in indefinite segregation. He plead guilty to aggravated battery, for which he was sentenced to an additional five years in prison.

Illinois State Police, asking them to initiate a separate investigation into the incident. Dole cooperated in both of these investigations; over twenty staff members were also interviewed. Both agencies issued full reports at the conclusion of their investigations. The Illinois State Police report was submitted to the Director of the Department of Corrections ("Director"), and the matter was referred to the State's Attorney of Randolph County for possible prosecution. The State's Attorney declined to prosecute, despite the fact that the report found the allegations credible, citing insufficient evidence, lack of witnesses, and conflicting staff member statements. The internal affairs report was also forwarded to the Director, as well as the Warden at Menard. That report concluded that defendants Hasemeyer, Pickering, and Chandler violated the Department's regulations governing the use of excessive force and failure to report violations. Those defendants were disciplined.

## B. The Illinois prisoner grievance process

The Illinois grievance process for prisoners usually includes five levels of review. A prisoner first submits a grievance to a counselor. ILL. ADMIN. CODE tit. 20, § 504.810(a). If the prisoner is not satisfied with the counselor's resolution of the complaint, he may then submit a formal grievance to the prison's grievance officer. ILL. ADMIN. CODE tit. 20, § 504.810(a) and (b). The grievance officer then reviews the grievance and forwards his recommendation to the warden. ILL. ADMIN. CODE tit. 20, § 504.830(d). The warden makes the final decision at the institutional level.

If the prisoner is not satisfied with the warden's response, he may file an appeal to the Director. ILL. ADMIN. CODE tit. 20, § 504.850(a). Appeals to the Director are to be addressed to the ARB. The Director is deemed to have referred the matter to the ARB, which in turn submits its recommenda-

tion to the Director. ILL. ADMIN. CODE tit. 20, § 504.850(b) and (f). The Director issues the Department's final decision. With certain exceptions, a prisoner housed in a facility other than the one where the incident giving rise to the complaint occurred files his appeal directly with the ARB. ILL. ADMIN. CODE tit. 20, § 504.870(a)(3).

Grievances must usually be filed within sixty days of the incident giving rise to the complaint, but the ARB reviews untimely grievances that include an explanation of good cause for the untimeliness. ILL. ADMIN. CODE tit. 20, § 504.810(a).

## C. Dole's grievance

On April 15, 2002, Dole completed a grievance form, complaining about the excessive force that he alleged the guards at Menard had used. The grievance stated that he had been beaten until a nurse stopped the guards, and that two disciplinary reports detailing his conduct during the incident were false. As relief, Dole requested that the officers who beat him be fired, that he be transferred from Tamms, that the disciplinary charge against him be dropped, and that he be paid one million dollars in damages.

Dole believed that the Assistant Warden of Tamms, who had just moved from the Assistant Warden position at Menard, was taking a suspiciously active role in Dole's affairs at Tamms. He therefore wished to retain a copy of his complaint in case it was "lost" by prison authorities. He did not have access to a copy machine, so he copied the entire complaint by hand. He handed the original form to his counselor at Tamms on April 19. On April 22, the counselor returned the grievance to him, with a note indicating that it needed to be submitted directly to the ARB since the incident had occurred at Menard and not Tamms.

That same day, he placed his complaint in an envelope addressed to the ARB. He placed the envelope in the "chuckhole" of his cell for the guard to pick up and mail. This was the only procedure that was available to him to mail his grievance. The defendants agree that the guard took the envelope.

Dole submitted two grievances to the Tamms Grievance Officer on April 18, four days before he mailed the grievance at issue in this case. In one, he complained of being put on suicide watch as retaliation for hitting Assistant Warden Frentzel. The ARB denied that appeal on July 25. In the other grievance, he complained about being transferred to Tamms. The ARB denied that appeal on July 24.

After Dole received decisions from the ARB on his other two appeals, he wrote to the ARB to inquire about the status of his third grievance, the one at issue in this case. He was told that the ARB had no record of the grievance. The letter did not contain any instructions on how Dole should proceed. By this time, the sixty day period for filing a timely grievance had passed. Dole did not attempt to re-file his complaint as untimely.

## D. District court proceedings

Almost eighteen months after being informed that the ARB had no record of his grievance on the subject, Dole filed this § 1983 action seeking compensatory and punitive damages for the beating he alleges he endured at Menard. Defendants Biggs and Hess moved for summary judgment on the ground that Dole had not complied with the exhaustion requirement of the PLRA.

Dole responded, arguing that the grievance process was "unavailable" to him after his initial complaint was lost, or, alternately, that he had materially complied with the PLRA in light of his participation in the Department's internal

investigation and the Illinois State Police investigation. He acknowledged that this circuit has taken a strict compliance approach to the PLRA, but argued the issue in the district court in order to preserve the argument for appeal.

Dole also noted that he had requested discovery from the defendants, including documents such as mail logs and postage disbursements from Tamms, and, from the ARB, records and procedures for processing grievances. Dole had not yet received a complete response to these requests when the summary judgment motion was filed. Defendants had submitted an affidavit by an ARB employee who stated that the ARB had no record of Dole's grievance. Defendants claimed that this was the only evidence that they were able to provide, and that the other documents that Dole had requested did not exist. Dole was not satisfied with this response and wished to conduct further discovery.

The magistrate judge filed his report and recommendation. While he recommended that Dole's complaint be dismissed for failure to exhaust administrative remedies under the PLRA, he also found that it was undisputed that Dole had given his complaint to the guard to mail to the ARB. The magistrate judge also noted that "[i]t [was] difficult to believe that more might have been done if plaintiff had exhausted his available remedy with the ARB."

The district court adopted most of the magistrate judge's recommendations, including the recommendation that summary judgment be granted for failure to exhaust. The court found it significant that Dole had taken no further action after learning that the ARB had no record of his complaint. The court also believed that if merely placing the grievance in the mail constituted exhaustion under the PLRA, then any prisoner could circumvent the exhaustion requirement by claiming that he mailed a complaint. The court also rejected Dole's analogy to cases that hold that

prison officials cannot exploit the exhaustion requirement by indefinitely delaying response to grievances, ruling that there was no evidence that prison officials destroyed or mishandled the grievance. The district court also refused to grant Dole's motion to compel responses to discovery.

Dole now appeals.

## II. Discussion

### A. Exhaustion under the PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages, *Porter v. Nussle,* 534 U.S. 516, 532 (2002), or if the prisoner believes that exhaustion is futile, *Booth v. Churner*, 532 U.S. 731 (2001). "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam). The Supreme Court has also noted that corrective action taken in response to a grievance might satisfy the prisoner, thus obviating the need for the litigation, or alert prison authorities to an ongoing problem that they can correct. *Porter*, 534 U.S. at 524-25.

The Supreme Court has stated that so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still "available" under the PLRA. *Booth*, 532 U.S. at 741; *see also Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001) (inmate must exhaust prison remedies if the administrative body (1) was empowered to consider the complaint and (2) could take some

action in response to it). Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

This circuit has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dale*, 376 F.3d at 655. Review of a district court's exhaustion finding is de novo. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

## B. Did Dole exhaust?

Dole argues that he has exhausted his administrative remedies. He argues that under *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002), he cannot be expected to do more than the state's regulations required of him. In that case, this court held that the district court erroneously ruled that the prisoner did not plead his case with enough particularity, when the state regulations did not dictate the degree of factual particularity necessary in a valid complaint. *Id.* The court stated that the prisoner's grievances were comprehensible and "contained everything Illinois instructed him to include," and therefore ruled that "Defendants can't complain that he failed to do more." *Id.*

The defendants argue that the rules provided Dole with the proper response when his complaint went missing. The regulations provide that "if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." ILL. ADMIN. CODE tit. 20, § 504.810(a). The Defendants cite *McCoy v. Gilbert*, 270 F.3d 503 (7th Cir. 2001), in support of their position. In that case, this court ruled that a prisoner did not exhaust his administrative remedies because he did not ask for discretionary untimeliness review under the federal prison grievance system. The court first rejected McCoy's premise that his window of opportunity to file a grievance had permanently closed, noting that discretionary review was still available. "Our concern is not whether [prison authorities] would have accepted or rejected the post-PLRA grievance. Instead, we 'merely need to ask whether the institution has an internal administrative grievance procedure by which prisoners can lodge complaints about prison conditions.'" *Id.* at 511 (quoting *Massey v. Helman*, 196 F.3d 727, 734 (7th Cir. 1999)). Because prison officials had the authority to take some sort of action with respect to a tardy complaint, the court agreed that McCoy must attempt to use the prison's remaining administrative process. *Id.*

*Strong* and *McCoy* tilt in opposite directions in this case, but we believe that *Strong* is more applicable here. *See Strong*, 297 F.3d at 650 (when a grievance meets all of the Administrative Code's written requirements, it cannot be dismissed because of a requirement on which "the administrative rulebook is silent"). In *McCoy*, the plaintiff had not filed *any* grievance. The PLRA was passed after the deadline for a timely grievance had expired, but before McCoy had filed suit in federal court. The *McCoy* court based its holding in part on the fact that McCoy was "merely being held to the same requirements as any other prisoner who filed suit after the enactment of the PLRA." *Id.* The court went on to state that had the prison refused

to hear McCoy's claim on untimeliness grounds, he would have been impermissibly procedurally "mousetrapped" by the PLRA, as his motivations for filing a grievance dramatically changed when that act became law. *Id.* at 512. The court noted that "we are of the opinion that McCoy has always had an opportunity to exhaust, but he simply chose not to," *id.* at 508, and that his suit was "precisely the type of litigious behavior the PLRA was designed to prevent," *id.* at 510.

Dole, unlike McCoy, has already given the prison administrative process an opportunity to resolve his complaint. Unlike McCoy, who simply chose not to file a grievance at all, the misstep in Dole's case was entirely that of the prison system. Dole could not maintain control of his complaint once the guard picked it up. He had no choice in the method used to transmit the complaint from the prison to the Board. He also had no means of being alerted that the ARB had not received his appeal in time to file a new, timely complaint; Illinois has no receipt system for prisoner mail.

Moreover, unlike McCoy, Dole would have little constitutional recourse if the ARB had refused to hear his untimely claim. Under *Pozo*, he would have indefinitely failed to exhaust, whereas the *McCoy* court clearly believed that McCoy would have had a valid argument that he had been procedurally "moustrapped" by the PLRA had his claim been refused. Because Dole was not specifically directed to re-file by the ARB, if he had filed an untimely claim, he might have ultimately prejudiced his case.

Defendants also cite *Cannon v. Washington*, 418 F.3d 714 (7th Cir. 2005), in support of their positions. In that case, an inmate's complaint to the ARB, which had originally been mailed within the time limits set forth in the regulations, was returned to him because it contained insufficient postage. The prisoner immediately re-sent it with the

proper postage, but the Board received the complaint after the deadline for filing and marked it untimely. The Board told the prisoner that it might reconsider its denial if he submitted a copy of his original grievance along with a new grievance explaining the delay. Instead of following that procedure, the prisoner wrote to the Director himself to seek reconsideration. The ARB denied the request because the prisoner had not followed the ARB's instructions. The prisoner raised a mailbox rule argument similar to the one Dole presses here, but the court rejected it. The court found that the original complaint was untimely as of the time that it was re-mailed. The court also ruled that because the prisoner did not follow the instructions that the ARB gave him, his letter to the Director did not exhaust his administrative remedies.

*Cannon* is distinguishable from this case. Cannon himself made not one, but two errors. First, he did not place sufficient postage on his original grievance. Then he did not follow the ARB's explicit instructions to rectify his original mistake. Such is not the case with Dole. All parties recognize that Dole's grievance was properly mailed within the correct time frame. Defendants also do not contend that the ARB explicitly instructed Dole on how to proceed after his grievance was lost. Thus, Dole has made neither of the mistakes that handicapped the inmate in *Cannon*.

The other PLRA cases cited by the defendants can be similarly distinguished. In each case, unlike this one, the *prisoner's* mistake triggered the exhaustion requirement. *See Pozo,* 286 F.3d at 1023-24 ("Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective . . ."); *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) (prisoner did not exhaust when, after he did not receive the relief he was promised, he did not appeal to the next level of review); *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002) (prisoner's appeal properly denied as untimely when he had

received notice of denial of a claim yet failed to appeal that claim until his other claims had also been denied).

Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies. Although it is possible that our holding would be different if the ARB had given Dole instructions on how to proceed and Dole had ignored or improperly followed those instructions, that is not the situation here.

We need not abrogate our holdings in *Pozo* and *Lewis* to reach this result. Dole fully complied with *Pozo's* strict compliance requirement. He filed his suit "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. He followed Illinois administrative rules to the letter; his complaint remains unresolved through no apparent fault of his own. In this case, the prison authorities acknowledge the initial deposit of the complaint, and the possibility of fraud in filing does not exist. In this limited context, prison authorities may not employ their own mistake to shield them from possible liability, relying upon the likelihood that a prisoner will not know what to do when a timely appeal is never received.

We believe that our holding in *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005), supports this conclusion. In that case, a prisoner filed several unanswered grievances and was told by prison officials that "sometimes the grievances get torn up." He did not file an appeal. This court ruled that Brengettcy had done all that is reasonable to exhaust, because the regulations did not instruct a prisoner on what to do when prison officials did not answer his grievance within the time frame prescribed in the regulations. This case is analogous. The regulations were not clear about how to proceed once a timely grievance was lost. Perhaps the regulation governing untimely grievances was inapplicable here, because Dole's griev-

ance was not *untimely* but instead a timely complaint that was never received. By properly mailing his ARB complaint, alerting the ARB that the complaint was mailed, and filing suit only after the ARB failed to clarify what he should do next, Dole had done all that was reasonable to exhaust his administrative remedies.

The district court found that Dole had not exhausted his remedies in part because of fears that all prison inmates could henceforth avoid the PLRA's exhaustion requirement simply by claiming that they mailed a letter. However, as explained above, such was not the case here. Moreover, we suggest that future false claims can be minimized by setting up a receipt system for prison mail.

We are also mindful of the concerns the Supreme Court expresses in *Houston v. Lack*, 487 U.S. 266 (1988). Although that case concerned statutory interpretation of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and thus is not directly binding here, we find the Court's logic instructive. The Court in that case ruled that a *pro se* prisoner's appeal is "filed" within the meaning of AEDPA when it is placed in the hands of the guards. Certainly this holding would result in the potential for prisoners to fraudulently claim that their appeal was mailed within the statutory deadline when it was actually mailed shortly after that time. The Court chose to accept that risk of fraud, however, reasoning:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other

litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. . . . And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. . . . [T]he only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston*, 447 U.S. at 270-72.

The same concerns apply in this case. We believe that the potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the prison authorities do not provide them with means for verification.

Defendants argue that our holding would not serve the goals of the PLRA, which they advance as (1) allowing the prison to solve potentially systemic problems outlined in grievances and (2) giving the prison notice that it is in danger of being sued. We conclude that Dole's complaint could have achieved both, if it had not been misplaced by the very system that, under the defendants' theory, the PLRA was designed to benefit.

Because Dole took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled, in the factual context of this case, he has exhausted his administrative remedies under the PLRA.

## III.  Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings on the merits of Dole's claim.
A true Copy:

       Teste:

 

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*