NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 17, 2007[*]
Decided January 17, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-2304

| | |
|---|---|
| SHABAZZ MUHAMMAD, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois |
| v. | No. 03-CV-152-JPG |
| EUGENE McADORY, et al., *Defendants-Appellees.* | J. Phil Gilbert, *Judge.* |

**O R D E R**

Illinois inmate Shabazz Muhammad claims in this action under 42 U.S.C. § 1983 that prison officials were deliberately indifferent to unsanitary conditions in C-Wing at Menard Correctional Center and that medical staff failed to treat physical injuries he sustained as a result of those conditions. The district court granted summary judgment for the defendants after concluding that Muhammad had failed to exhaust his administrative remedies. Muhammad appeals.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

We construe the evidence in the light most favorable to Muhammad. *See Tibbs v. City of Chi.*, 469 F.3d 661, 664 (7th Cir. 2006). In December 2002 Muhammad was assigned to disciplinary segregation in C-Wing. According to Muhammad, the living conditions in C-Wing were foul—trash, chewing tobacco, blood, and feces littered the floors; stale scraps of food encrusted the walls; and garbage bins containing food, soiled diapers, and exhausted medical supplies were purposefully left uncovered by staff. The conditions created a breeding ground for bugs and rodents, and on January 14, 2003, a rodent bit Muhammad's foot while he prayed in his cell. That same day Muhammad submitted an emergency grievance directly to Eugene McAdory, who was then the warden at Menard, complaining about the conditions in C-Wing and advising McAdory that he had been bitten by a mouse. The grievance contained no mention of the medical care he received as a result of the mouse bite. On January 18, having heard nothing from McAdory, Muhammad delivered a copy of his emergency grievance to a grievance officer. Still he heard nothing from either McAdory or the grievance officer, so on January 24 he sent a copy of his emergency grievance to the Administrative Review Board. The Board received the grievance on January 28 and returned it to Muhammad the following day, advising: "Follow grievance procedure if [the warden] denies emergency—per DR504 emergency grievance has no specific time period to be acted upon." Muhammad maintains that neither McAdory nor the grievance officer ever responded to his submissions.

On March 6, 2003, fifty-one days after he first tendered his emergency grievance to Warden McAdory, Muhammad filed this lawsuit.[1] As relevant to Muhammad's claims, he named as defendants Warden McAdory, four other administrators, and Dr. Stephen Doughty. Muhammad alleged that the administrators were aware of the unsanitary conditions in C-Wing and purposefully allowed the conditions to exist as additional punishment for the inmates assigned to that wing. As to Dr. Doughty, Muhammad alleged that when he sought medical treatment for the mouse bite, Doughty told him that nothing was wrong with his foot and refused to prescribe antibiotics. In addition, Muhammad alleged that he attempted but was unable to exhaust his administrative remedies because "officials at the Illinois Department of Corrections deliberately sabotaged the completion of this process by refusing to answer plaintiffs' grievances." Muhammad also raised a culpable negligence claim against all defendants under Illinois state law.

The district court, concluding that Muhammad had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), granted summary

---

[1]Two other inmates confined to C-Wing—Glen Smith and Herman Rich—joined Muhammad as plaintiffs. Smith voluntarily dismissed his claims, and Rich has not appealed.

judgment for all defendants on Muhammad's federal claims.[2] The court reasoned that, even though Muhammad's attempt to utilize the emergency grievance procedure might have been frustrated by Warden McAdory's failure to respond to his grievance, the standard grievance procedure remained available to him. The court continued that, despite Muhammad's arguments to the contrary, the fact that he submitted a copy of his emergency grievance to a grievance officer on January 18 refuted his contention that the standard grievance procedure was unavailable due to a shortage of grievance officers. The court added that fifty-one days was not the "sort of 'indefinite[] delay' that renders an administrative remedy unavailable." The district court then declined to exercise supplemental jurisdiction over Muhammad's state-law claim. The court dismissed the suit without prejudice, but as a practical matter that dismissal was with prejudice because more than three years had elapsed since Muhammad filed suit, and the statute of limitations for both the federal and state claims in his complaint is two years. *See Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Dolis v. Chambers*, 454 F.3d 721, 723-24 (7th Cir. 2006) (explaining that dismissal without prejudice is effectively dismissal with prejudice if statute of limitations bars refiling).

Muhammad argues here that the conditions in C-Wing were inhumane and therefore the steps he took to pursue his emergency grievance were sufficient to exhaust his administrative remedies. He says that he was not required to pursue his grievance through both the emergency and the standard procedure even though he did so "in good faith." In any event, he insists, the standard grievance procedure was unavailable to him because grievances were not being processed due to a shortage of grievance officers.

An inmate must exhaust all available administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S. Ct. 2378, 2382-83 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Nevertheless, we have held that an inmate who has requested that prison officials handle a grievance on an emergency basis under Title 20, § 504.840, of the Illinois Administrative Code is not required to resubmit that grievance through the standard procedure after the warden—the official responsible for acting on emergency grievances—concludes that the grieved condition is not an emergency. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). And prison administrators may not frustrate an inmate's efforts to comply with the administrative review process by imposing hurdles that are not part of the established grievance procedure. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

---

[2]The district court granted summary judgment for three of the defendants on March 29, 2005, and for the other three defendants on March 29, 2006. The court employed similar reasoning in each decision.

A genuine issue of material fact exists concerning whether prison officials thwarted Muhammad's efforts to exhaust his administrative remedies when they did not respond to his emergency grievance. Prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (internal quotation marks and citation omitted). In this case it is undisputed that Warden McAdory never responded to Muhammad's emergency grievance. McAdory did not address the grievance on the merits or advise Muhammad that he did not deem expedited handling necessary. Moreover, as far as the record shows, McAdory never passed the emergency grievance on to a grievance officer for routine action. The defendants are left to argue, then, that it was up to Muhammad to pursue his grievance through the standard grievance procedure when he did not receive a response from McAdory.

The defendants, however, offered no evidence to support their position that Muhammad was obliged to refile his emergency grievance through the standard grievance procedure, and they fail to explain how their position can be reconciled with § 504.840 and the reading we gave that provision in *Thornton*. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (explaining that failure to exhaust is an affirmative defense that defendants must plead and prove). The defendants insist that the standard grievance procedure remained available to Muhammad, as evidenced by his admission that he gave a copy of his emergency grievance to a grievance officer on January 18, and thus, the defendants contend, Muhammad was required to wait two months from that time before filing suit. *See* Ill. Admin. Code. tit. 20, § 504.830(d). But the defendants produced no evidence that the grievance officer understood Muhammad's January 18 submission to be a newly initiated grievance that required the officer's action rather than, as Muhammad says, a copy of the emergency grievance he was trying to prod Warden McAdory to address. The defendants have never cited any section of the administrative code or produced any evidence that a policy in force at Menard required Muhammad to pursue his grievance through both the emergency and standard procedures as a prerequisite for exhaustion. Moreover, even if Muhammad's act of giving a copy of his emergency grievance to a grievance officer somehow imposed a duty on him to pursue his grievance through the standard procedure (and we do not suggest that it did), *see Thornton*, 428 F.3d at 694, the record contains no evidence that the grievance officer ever responded to the grievance, *see Dole v. Chandler,* 438 F.3d 804, 811-12 (7th Cir. 2006) (explaining that inmate's administrative remedy was unavailable where prison officials mishandled inmate's grievance). Indeed, in the district court the defendants did not even acknowledge whether a grievance officer ever *received* a copy of Muhammad's emergency grievance.

The defendants also contend that Muhammad "was specifically instructed to follow the regular grievance procedure." This contention, however,

mischaracterizes the explicit instruction he received from the Administrative Review Board. The Board advised Muhammad to follow the regular grievance procedure "if [the warden] denies emergency." The warden, though, never responded to Muhammad's emergency grievance, so the condition precedent to using the regular procedure never came to pass. The Board expected Warden McAdory to act, and he did not. This is exactly the type of situation that renders an inmate's administrative remedy unavailable. *See id.* (holding that Illinois prisoner exhausted available remedies where he properly submitted grievance and alerted Administrative Review Board that grievance had been submitted, but Board failed to instruct him on how to proceed after grievance was lost); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (holding that prisoner exhausted available remedies where he filed several unanswered grievances, was told that "sometimes the grievances get torn up," and regulations did not instruct him on how to proceed when grievances remained unanswered).

It follows that disputed issues of fact remain concerning whether Muhammad exhausted his administrative remedies as to his federal claim that Warden McAdory and the other administrators maintained C-Wing in a condition that violated the Eighth Amendment; summary judgment for the prison administrators was not appropriate on this affirmative defense. On the other hand, the present record is sufficient for us to conclude that Muhammad did not exhaust his federal claim against Dr. Doughty because his grievance cannot be construed to object to the medical treatment he received during his confinement in C-Wing. Accordingly, the dismissal of Muhammad's federal claim against Dr. Doughty is AFFIRMED, but in all other respects the judgment of the district court is VACATED, and the case is REMANDED for further proceedings on Muhammad's federal claim against the prison administrators as well as his supplemental pendent state claim against all defendants.