NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 17, 2014[*]
Decided January 24, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 13-2691

| | |
|---|---|
| RICHARD J. STEISKAL, JR., *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-C-1241 |
| MICHAEL LEWITZKE, et al., *Defendants-Appellees.* | William C. Griesbach, *Chief Judge.* |

**O R D E R**

Richard Steiskal, an inmate at Racine Correctional Institution, suffers from Bell's palsy, a condition that was diagnosed soon after one of the defendants, a former prison dentist, allegedly failed to treat an infection at the site of an extracted tooth. In this suit under 42 U.S.C. § 1983, Steiskal principally claims that the dentist and other prison staff were deliberately indifferent to his serious medical needs, in violation of the Eighth

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Amendment. The district court concluded that Steiskal's failure to exhaust his administrative remedies before suing was undisputed, *see* 42 U.S.C. § 1997e(a), and granted summary judgment for the defendants. We affirm that ruling but modify the dismissal to be without prejudice.

Except as noted, the principal facts are not disputed. Steiskal's tooth was extracted in June 2012. His medical records indicate that on the day before the procedure the dentist had detected an infection, but Steiskal was given an oral antibiotic only before but not after the extraction. He remained in pain for a week before complaining to the dentist that the foul discharge he had noticed in his mouth before the procedure was still present at the extraction site. After a brief look, however, the dentist sent Steiskal away without treatment and told him to return in a week or two if his symptoms did not abate. Nine days later Steiskal was rushed by ambulance to the emergency room after experiencing symptoms that prison staff attributed to a probable stroke—blurred vision, facial paralysis, and muscle weakness.

At the hospital Steiskal was treated with antibiotic, antiviral, and steroidal drugs. A physician diagnosed him with Bell's palsy and said that the condition could have been caused by a surgical procedure or infection. Bell's palsy results from disruption, possibly from infection or trauma, to the facial nerves controlling the muscles on each side of the face. Symptoms, which can include twitching and even paralysis, appear suddenly and can peak within 48 hours. Improvement typically occurs within two weeks without treatment, but if symptoms persist, a course of treatment may prevent lasting damage, especially for palsy caused by infection. Most patients recover completely within six months, but symptoms may become permanent in those with significant nerve damage. *Bell's Palsy Fact Sheet* (2012), NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, available at http://www.ninds.nih.gov/ disorders/bells/ detail_bells.htm.

After his release from the hospital, Steiskal submitted on July 5 a prison grievance recounting that the onset of his Bell's palsy had occurred about a week after the dentist ignored the infection at the extraction site. He received that grievance back unprocessed on July 11, the day after it was received by the Institution Complaint Examiner (or "ICE"). Accompanying the grievance was a July 10 letter from another of the defendants, an assistant to the ICE, telling Steiskal that his submission would not be "accepted" until he followed the "chain of command" and attempted to "resolve the issue by contacting Mr. Montagna, Dental Supervisor." The letter further advised that, "[i]f you have attempted to resolve the issue through the person(s) indicated above and

have not been able to do so, you may resubmit your complaint (with all pertinent documentation) for processing by this office within 14 calendar days."

Steiskal did as instructed and on July 14 submitted a Dental Service Request asking that Montagna read an attached letter, which relates Steiskal's belief that his Bell's palsy resulted from the failure to treat his infection. On July 18, having received no reply, Steiskal submitted a second Dental Service Request with a similar letter addressed to Montagna. That same day Steiskal's first Dental Service Request was returned, and the second was returned the following day. Both included a note saying that Montagna no longer worked at the prison and that his letters had been "forwarded to Dr. Barbara DeLap, Dental Director." On July 19, with these replies in hand, Steiskal submitted to the warden a form Request for Review of Rejected Complaint, which the warden did not acknowledge and the defendants deny he received. Steiskal recounted the substance of his July 5 grievance and asserted that it had been "denied" even though minimal inquiry would have shown that the person he was told to consult did not work at the prison. (Steiskal had not waited to hear from DeLap, another of the defendants, but as far as this record shows, no one directly answered the letters intended for Montagna that were forwarded to her.) The next day, July 20, Steiskal also wrote the warden. He repeated his belief that his Bell's palsy had resulted from the untreated infection and asked that the warden intervene with the ICE. On July 25 (now 15 days after his unprocessed grievance had been given back to Steiskal) a fourth defendant, an assistant to the Health Services Manager, wrote Steiskal on the warden's behalf. Her letter, which was copied to the warden and DeLap, acknowledges Steiskal's condition, informs him that Bell's palsy typically is a temporary condition, and advises that he "follow up with the institution provider for any further plan of care needed."

Steiskal was not satisfied with the results of this process, but what he did not do was resubmit his grievance and documentation to the ICE as instructed when that grievance was given back on July 11. Instead Steiskal filed this action five months later in December 2012. In his verified complaint Steiskal recounts the events preceding his hospitalization in June and adds that in late July he was sent to the hospital again because, in addition to left facial paralysis, his Bell's palsy was causing severe headaches and a loss of feeling in his left arm and leg. During that visit, Steiskal continued, the hospital physician had directed that he be seen by a neurologist, but the prison medical staff did not comply until early September and in the interim gave him nothing for his pain. The response of the prison medical staff, he added, was that he would have to let the condition "take its course."

The defendants moved for summary judgment on the ground that Steiskal had not exhausted his administrative remedies. Inmates in Wisconsin submit their grievances to the ICE, who, as authorized by regulation, may "reject" a grievance for an enumerated reason or "return" it without processing if it is not in the required form, includes profanity or threats, or presents multiple issues. WIS. ADMIN. CODE §§ DOC 310.07(1), (2)(b), DOC 310.09(1), (3), DOC 310.11(5); *Johnson v. Meier*, 842 F. Supp. 2d 1116, 1118 (E.D. Wis. 2012); *Freeman v. Berge*, 283 F. Supp. 2d 1009, 1013 (W.D. Wis. 2003); *State ex rel. Grzelak v. Bertrand*, 665 N.W.2d 244, 247 (Wis. 2003). The defendants did not contend, however, that the ICE had "rejected" Steiskal's grievance or "returned" it for any of these reasons. Instead, they asserted that the ICE had "returned"—but not "rejected"—the grievance "rather than accepting it for filing because Steiskal was required to first attempt to resolve his grievance directly with the dental services unit." For this proposition the defendants cited exclusively to WIS. ADMIN. CODE § DOC 310.09(4), which provides that, "[p]rior to accepting the complaint, the ICE may direct the inmate to attempt to resolve the issue." And though they conceded that Steiskal had done what the ICE had asked by trying to contact Montagna, the defendants noted that he did not resubmit his July 5 grievance along with the documentation of his efforts. It follows, the defendants insisted, that Steiskal could not have exhausted even the first level of the administrative process because the ICE never had a grievance to consider.

The district court agreed with the defendants that Steiskal had not exhausted his administrative remedies. The court accepted the defendants' premise that § DOC 310.09(4) authorized the ICE to give back Steiskal's unprocessed grievance in order for him to attempt an informal resolution. That grievance counted for nothing, the court assumed, and since Steiskal did not resubmit it to the ICE, he never even *initiated* the grievance process. Moreover, the court added, Steiskal's submissions to the warden were no substitute for a grievance directed to the ICE.

In addition, although the defendants had never asserted that Steiskal's complaint fails to state a claim and did not question the merits of his Eighth Amendment claim at summary judgment, the district judge offered his observation that Steiskal's "complaint would not survive" even if he had exhausted his administrative remedies. The judge reasoned that Steiskal could not establish deliberate indifference because, when Steiskal had returned complaining of continuing pain and an apparent infection, the dentist examined him and exercised medical judgment in deciding "to not recommend antibiotics and wait to see if Steiskal's symptoms progressed."

On appeal Steiskal focuses on the merits of his Eighth Amendment claim, explaining that more than a year after his tooth extraction and diagnosis of Bell's palsy he still is experiencing headaches, facial paralysis, and partial blindness. He must see his neurologist at least four times annually, he explains, and may have to take medication for the rest of his life. To the extent that Steiskal discusses the exhaustion issue, he argues that his attempt to submit a grievance was thwarted when the ICE's assistant directed him to contact a person who no longer worked at the prison and then his two letters were forwarded to someone else. His letter to the warden, he continues, should excuse his noncompliance with the directive to resubmit his July 5 grievance. Moreover, insists Steiskal, resubmitting the grievance to the ICE who already had misled him once would have been a futile gesture.

To begin, we cannot uphold the dismissal of this lawsuit based on the premise, articulated by the district court, that Steiskal's complaint fails to state a claim of deliberate indifference to a serious medical need. The defendants have never advanced that contention, and neither do they ask us to affirm the judgment on this alternative basis. In his verified complaint and in several other declarations, Steiskal asserts that on his return visit a week after the extraction he told the dentist that he had been in pain ever since the procedure and was tasting a foul discharge oozing from the space where the tooth had been. The dentist sent him away, he says, after 10 to 20 seconds, without an antibiotic for the infection or even medication for the pain. Nothing in the record confirms the district court's belief that the dentist exercised "medical judgment" after an "examination." Steiskal tells us that the dentist *declared* the extraction site to be free of infection, but that declaration does not negate the ready inference that the dentist ignored not only Steiskal's pain but also the obvious signs of infection. Steiskal's medical records evidence that the dentist knew there was an infection before the procedure, and the hospital physician's drug regimen would indicate that the extraction site still was infected when Steiskal was hospitalized. Whether or not Steiskal ultimately could link the untreated infection to his Bell's palsy, his complaint at least states a claim for deliberate indifference to the infection and resulting pain. *See Gomez v. Randle*, 680 F.3d 859, 862, 865–66 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 637–38, 641 (7th Cir. 2010); *Berry v. Peterman*, 604 F.3d 435, 438–39, 441 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 819–20, 832 (7th Cir. 2009); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). At this point Steiskal's story is uncontested; the district court did not even hear from the dentist, and indeed the defendants persuaded the court to stay discovery pending a decision on their exhaustion defense.

We do agree with the district court, however, that Steiskal's failure to exhaust his administrative remedies is undisputed. That said, we are skeptical of the defendants' exclusive and uncritical reliance on DOC § 310.09(4). That section literally says that the ICE may direct the inmate to attempt an informal resolution "[p]rior to accepting the complaint," but it does not direct the ICE to "return" a grievance until that step has been completed. Neither does DOC § 310.09(4) say, as the defendants' motion for summary judgment asserts, that Steiskal had been "required" to address the matter "directly with the dental services unit" even before he submitted his grievance to the ICE on July 5. That reading implies that inmates must always attempt an informal resolution before submitting any grievance.

In this appeal, however, Steiskal does not challenge the defendants' understanding about how DOC § 310.09(4) is implemented, so we need not explore that question further. Steiskal concedes that he never followed up with the ICE by resubmitting his grievance or even providing the ICE with his documentation showing that he followed the directive to attempt an informal workout. As the district court correctly explained, before suing in federal court Steiskal was required to follow the prison's established grievance procedures. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus he did not exhaust, regardless of whether he was unsuccessful in trying to resolve the issue or whether the ICE's assistant gave him incorrect information. He submitted no evidence that prison staff prevented him from resubmitting his grievance or that he was incapable of doing so. *See Dole*, 438 F.3d at 809. His subjective belief that he was being thwarted was insufficient to create a genuine issue of material fact. *See Obreicht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008).

Steiskal's futility argument, moreover, is a nonstarter. He asserts that the steps he was told to take would have been futile because the administrative remedies available through the prison's grievance process would not resolve his concerns. The damage had already been done, he argues, so following up with the dental supervisor would have been a useless step, as would resubmitting his grievance to the ICE. But prisoners still must exhaust even if they believe the process will be futile, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *Obreicht*, 517 F.3d at 492, or cannot provide the desired relief, *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth*, 532 U.S. at 738; *Dole*, 438 F.3d at 808–09. There was a process available for Steiskal to exhaust, and he did not follow it.

Steiskal finally argues that the district court erred by rejecting his requests for help in recruiting counsel. But Steiskal had no right to court-enlisted counsel for this

federal civil suit, *see Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006), and although he did attempt to secure counsel, he points to nothing in the record establishing that he was prejudiced by the denial, *see Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc). His fatal error—failing to resubmit his grievance—occurred months before he asked for a lawyer.

Accordingly, we uphold the dismissal of Steiskal's lawsuit on the ground that he failed to exhaust his administrative remedies. That dismissal should have been without prejudice, *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), and since the judgment does not specify that it was, *see* FED. R. CIV. P. 41(b), we modify the judgment to be without prejudice.

**AFFIRMED** as **MODIFIED**.