In the

# United States Court of Appeals
## for the Seventh Circuit

No. 20-1963

SHAWN WILLIAMS,

*Plaintiff-Appellant,*

*v.*

NAVEEN RAJOLI and TARA POWERS,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-00442-JPH-DLP — **James P. Hanlon**, *Judge.*

ARGUED SEPTEMBER 14, 2021 — DECIDED AUGUST 17, 2022

Before SYKES, *Chief Judge*, and EASTERBROOK and
BRENNAN, *Circuit Judges.*

SYKES, *Chief Judge.* Shawn Williams is an inmate at
Wabash Valley Correctional Facility in Carlisle, Indiana. He
sued a prison doctor and nurse under 42 U.S.C. § 1983
accusing them of deliberate indifference to his medical
needs. Specifically, Williams alleges that the doctor errone-
ously discontinued the pain medication needed to manage
his chronic tendinitis and that the nurse made him do pain-

ful exercises while handcuffed and shackled at a follow-up appointment.

Before filing suit Williams attempted to resolve his complaints through Indiana's administrative-review system. As required by the state's grievance policies, Williams tried to informally resolve his complaints before filing a formal grievance with prison officials. But Indiana's policy also requires formal grievances to be filed within ten business days of the incident giving rise to the complaint. Williams did not meet this deadline, believing that prison officials needed to respond to his informal grievance attempts before he could file a formal grievance. When prison officials did not respond to Williams's initial attempts at informal resolution, he continued to pursue the matter informally. Only after Williams received a response did he file a formal grievance, but by then it was untimely.

The district court granted the defendants' motion for summary judgment, ruling that Williams failed to exhaust his administrative remedies. We affirm. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available remedies in the prison's administrative-review system before filing suit in federal court. Williams did not do so. Though he eventually submitted a formal grievance, it was filed too late. Williams did not need a response to his attempts at informal resolution to file a formal grievance. And his argument that he had good cause for his failure to timely file a formal grievance is both unexhausted and waived.

## I. Background

Williams suffers from chronic tendinitis in his left knee and has been prescribed pain medication. After injuring his pinky finger, Williams received an X-ray and was seen by Dr. Naveen Rajoli on July 19, 2019, to review the results. Williams's finger did not require further treatment, but in an apparent error, Williams was removed from his pain medication. The next day Williams filed a "Request for Health Care" form with prison officials indicating that he was still experiencing pain in his knee and that he was no longer receiving his medication. Williams was seen by nurse Tara Powers on July 23. He alleges that during this appointment, she caused him further knee pain by making him do exercises while handcuffed and shackled. His medication wasn't reinstated at that time, and Williams continued to experience pain in his knee.

Williams then began the first of a series of attempts to resolve his complaints informally. Indiana's grievance policy requires a prisoner to first "attempt to resolve [his] complaint informally" with prison officials. IND. DEP'T OF CORR., ADMIN. P. NO. 00-02-301, § X.[1] He may then file a formal administrative grievance. A prisoner must "provide evidence" of his attempts at informal resolution when filing a formal grievance, of which the policy provides two examples: "'To/From' correspondence" and "State Form 36935, 'Request for Interview'" forms. *Id.* The formal grievance procedures reiterate that a prisoner must "document [his]

---

[1] Indiana's grievance policy was revised effective September 1, 2020. We refer to the earlier policy that was in effect at the time of Williams's complaints in July 2019.

attempts at informal resolution" when filing a grievance. *Id.* § XI.A.4. A prisoner must also file his formal grievance with the prison's Offender Grievance Specialist within ten "business days from the date of the incident giving rise to the complaint or concern." *Id.* § XI. The formal filing must "explain how the situation or incident affects" the prisoner and "suggest appropriate relief or remedy." *Id.* § XI.A.7–.8.

The Offender Grievance Specialist reviews formal grievances. Formal grievances that don't comply with the policies will be returned to the prisoner, who then has five business days to revise and resubmit. *Id.* § XI.B. At this stage of the process, a prisoner has an opportunity to cure both a failure to properly explain his attempts at informal resolution and a failure to initiate informal resolution if it wasn't attempted. A formal grievance that doesn't comply with the policies may still be considered if "good cause" is shown for the violation: "[t]he Offender Grievance Specialist has the discretion to consider" noncompliant grievances when the prisoner satisfies the good-cause standard. *Id.*

Williams submitted two informal grievances on Request for Interview forms to Amy Wright, Wabash Valley prison's Director of Nursing, between July 23 and July 28—the first protesting the medication discontinuation, the second challenging Powers's treatment. Williams says he submitted these informal requests through the prison's internal mail system. But the prison has no record of them, and Williams never made copies. Prison officials never replied to either of these informal grievance attempts.

After not receiving a response to his two July attempts at informal resolution, Williams submitted two more informal grievances on August 5, again on Request for Interview

forms. He made handwritten copies of these forms and subsequent informal grievance forms. But in the meantime, the time limit of ten business days to file a formal grievance was ticking down. Williams had until August 2 to file a formal grievance about being removed from his medication on July 19. And he had until August 6 to file a formal grievance regarding Powers's treatment on July 23.

Williams submitted two more informal grievances on Request for Interview forms—one on August 12 and another on August 15. And he also submitted a Request for Health Care form on August 12. Wright responded to Williams's August 12 request for health care on August 19, indicating that Williams had seen Dr. Rajoli on July 19, his medications had been stopped, and he was scheduled to see a different doctor that day (August 19).

On August 20 Williams filed his first formal grievance. Prison officials returned the formal grievance to Williams on August 29 for failure to comply with the filing deadline of ten business days. Williams did not revise and resubmit the formal grievance. Instead, he filed a pro se § 1983 complaint in district court against Dr. Rajoli and Powers alleging that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Dr. Rajoli and Powers moved for summary judgment, arguing that Williams failed to exhaust administrative remedies as required by the PLRA by failing to file a timely formal grievance. The judge granted the motion.

Williams appealed and sought permission to proceed *in forma pauperis*. The judge denied this request, finding that an appellate challenge to whether Williams had exhausted his administrative remedies would not be in good faith. *See*

28 U.S.C. § 1915(a)(3). Williams challenged that decision in this court, and a motions panel authorized him to proceed *in forma pauperis* and recruited pro bono counsel to assist him on appeal.[2]

## II. Discussion

We review de novo a district court's decision to grant summary judgment for failure to exhaust administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). We view the facts in the light most favorable to Williams, the nonmoving party. *Hill v. Snyder*, 817 F.3d 1037, 1039 (7th Cir. 2016). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense; the burden of proof is on the defendants. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

We take "a strict compliance approach to exhaustion" under the PLRA. *Dole*, 438 F.3d at 809. Exhaustion requires a prisoner to "take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). And if the prison administrative authorities can "take *some* action"—even if it's not the requested action and even if the prisoner believes that exhaustion will be "futile"—administrative remedies are available, and the prisoner must exhaust them. *Dole*,

---

[2] Richard W. Fox, Minh O. Nguyen-Dang, and Michael A. Scodro of Mayer Brown accepted the representation and have ably discharged their duties. We thank them for their service to their client and the court.

438 F.3d at 809. But a prisoner needn't exhaust a remedy that's "unavailable," such as when "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.*

## A. Formal Grievance Filing Deadline

Williams contends that the formal grievance process was unavailable to him until prison officials responded to his attempts at informal resolution. He claims that without a response he could not submit the evidence required to document his attempts at informal resolution.

This argument misreads Indiana's grievance policy. To be sure, the policy required Williams to "attempt to resolve" his grievance informally, and he needed to "provide evidence" of his attempt at informal resolution. IND. DEP'T OF CORR., ADMIN. P. NO. 00-02-301, § X. But the policy doesn't require a prison official to respond to the informal resolution request before a prisoner can file a formal grievance. The need for evidence of an attempt at informal resolution isn't linked to a response from prison officials; the policies don't require specific documentary evidence to file a formal grievance. Though Williams believed otherwise, he should have "err[ed] on the side of exhaustion" and timely initiated the formal grievance process when he did not receive a response before the ten-day deadline expired. *Ross v. Blake*, 578 U.S. 632, 644 (2016).

Moreover, formal grievances that are returned because the prisoner failed to attempt to resolve the complaint informally can be revised and resubmitted. That's true both if the prisoner failed to document his attempt at informal

resolution *and* if the prisoner failed to begin informal resolution at all. The prison's Return of Grievance form advises prisoners that "[i]f you have tried to resolve [the complaint] informally, please fill out the grievance form to indicate that. If you have not tried to resolve it informally, you have five (5) days to begin that process." The latter occurred in *Hill*, 817 F.3d at 1039. There, the prisoner filed four formal grievances. He filed one grievance before he had attempted to resolve the issue informally, and the grievance was returned on that basis. *Id.* But he was given the opportunity to pursue informal resolution and resubmit the formal grievance. *Id.* at 1040. Even if Williams believed that he lacked the required information to file a formal grievance, he could have made revisions after it was timely filed.

Williams relies on *Hill* and *Dole* to argue that the prison officials' failure to respond to his attempts at informal resolution made the administrative process unavailable. This reliance is misplaced. In *Dole* we held that a prisoner had exhausted his administrative remedies when he timely mailed his grievance and followed prison "administrative rules to the letter," but the grievance never arrived because "prison officials were responsible for … mishandling" it. 438 F.3d at 811. "In this limited context," the prison officials' "own mistake" led us to conclude that the prisoner had cleared the exhaustion hurdle. *Id.* Not so here. Williams simply failed to timely initiate the formal grievance process. He is therefore subject to the PLRA exhaustion rule that "when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In *Hill* we held that the administrative process was unavailable to a prisoner at Wabash Valley when prison officials refused to give him the *formal* grievance form. 817 F.3d at 1039, 1041. Prison officials thus affirmatively prevented him from beginning the grievance process. But unlike the formal grievance form, a response to an informal grievance isn't needed to initiate the grievance process and therefore a delayed response doesn't make the administrative process unavailable. *See Cannon v. Washington*, 418 F.3d 714, 718–19 (7th Cir. 2005) (per curiam) (holding that a prisoner failed to exhaust even though prison staff confiscated his legal documents because those documents weren't needed to file a grievance). And Williams's case is a far cry from other kinds of affirmative misconduct that we have held interfered with a prisoner's ability to exhaust—like when prison officials allegedly threatened a prisoner's life for using the administrative process. *See Kaba*, 458 F.3d at 680, 682, 686.

Rather than helping Williams, *Hill* illustrates why he failed to exhaust. In one of the other grievances at issue there, the prisoner attempted to resolve the dispute informally and like Williams received no reply. *Hill*, 817 F.3d at 1039. But unlike Williams, the prisoner filed his formal grievance by the required deadline. Prison officials returned the formal grievance claiming that it *had* been informally resolved. *Id.* We held that the prisoner failed to exhaust because he did not revise and resubmit his formal grievance to rebut the prison's assertion that his claim had been informally resolved. *Id.* at 1040–41. *Hill* illustrates that a prisoner must revise his formal grievance even if he has not received a reply to his informal grievance attempt. The same is true when the prisoner initially files the formal grievance: a reply

from prison officials to the prisoner's informal grievance attempt is not required.

Williams offers a second reason why he needed to wait for a reply from prison officials to file his formal grievance. He contends that without a reply he couldn't adequately explain how the incidents affected him or suggest appropriate remedies.

But it isn't clear why not. There's no requirement that the formal grievance name the prison official involved in the incident. *See* IND. DEP'T OF CORR., ADMIN. P. NO. 00-02-301, § X. Williams's attempt to analogize to *Hill* on this point is unpersuasive. Not receiving a reply to a request for an informal resolution is not the functional equivalent of being denied a formal grievance form. Unlike in *Hill* where prison officials failed to provide the prisoner with the formal grievance form, 817 F.3d at 1041, no one prevented Williams from explaining his complaints and suggesting a remedy in a formal grievance. He believed that he was erroneously taken off his medication and that his medication should be reinstated, and he further believed that the nurse who treated him on July 23 should be disciplined for making him do exercises that caused him further pain. Williams made exactly these arguments in both informal grievances and in his untimely formal grievance. Indiana's policies don't call for more specificity than that. The administrative remedies were fully available to Williams; he just failed to exhaust them.

## B. Good Cause

Williams argues for the first time on appeal that his failure to timely file a formal grievance should be excused for

good cause. This argument is waived. Even if we set the waiver aside, the argument is unexhausted.

Prison officials have the discretion to consider an untimely formal grievance if the prisoner can show good cause for the delay. IND. DEP'T OF CORR., ADMIN. P. NO. 00-02-301, § XI.B. But Williams never made that argument in his formal grievance. Nor did his formal grievance specifically mention the most pertinent fact to his good-cause claim—that he submitted timely informal grievances in July and waited to file a formal grievance because he mistakenly believed that he needed to wait for a response. And Williams did not correct this error by revising and resubmitting his formal grievance within the required deadline of five business days. Williams thus failed to exhaust his good-cause argument, just like he failed to exhaust his other claims. *See Cannon*, 418 F.3d at 718 (holding that a prisoner failed to exhaust when he failed to revise a grievance form to explain good cause for his untimely filing).

AFFIRMED